## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES B. BOLES, Liquidation Trust Representative of the enivid, inc. Liquidation Trust, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW J. FILIPOWSKI, PAUL HUMENANSKY, MICHAEL CULLINANE and JUDE SULLIVAN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 05-CV-10675-PBS

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO WITHDRAW REFERENCE TO BANKRUPTCY COURT

Plaintiff, James B. Boles, the Liquidation Trust Representative (the "Trustee") of the Liquidation Trust established pursuant to the Official Committee of Unsecured Creditors' Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code dated September 30, 2004, as Modified November 23, 2004 (the "Plan"), as Confirmed by Order of the Bankruptcy Court dated December 8, 2004, and which Plan became Effective on December 20, 2004, files this Memorandum of Law in opposition to Defendants' Motion to withdraw the reference of this adversary proceeding to the Bankruptcy Court (the "Motion"). In opposition to the Motion, the Trustee states as follows:

## REQUEST FOR ORAL ARGUMENT

The Trustee believes that oral argument may assist the Court and wishes to be heard. Therefore, pursuant to Local Rule 7.1(d), the Trustee respectfully requests that this matter be set for hearing.

## <u>INTRODUCTION</u>

Defendants' Motion requests this Court to withdraw the reference from the Bankruptcy Court, thereby transferring the Trustee's lawsuit against them to this Court. This unusual relief, which this Court is required by law to use "caution" in employing, is based on two, and only two, grounds. First, Defendants argue that this Court should try the Trustee's case alongside two class action suits, presently pending before it, brought by allegedly defrauded shareholders against some (but not all) of the Defendants in this matter. Second, the Defendants argue that the Trustee's claims against them are "largely" based on state-law breach of duty causes of action, rather than on bankruptcy-related claims.

As will be shown in detail herein, not only is the Motion fatally premature, but neither of these arguments has any merit. Defendants' attempt to shoehorn the Trustee's case in with the shareholder actions is inappropriate, considering that the cases involve different facts, claims, *and* parties. Moreover, well-settled authority demonstrates that judicial economy would *not* be served by lumping all three actions together. As for Defendants' argument that the Trustee's action is state-based, it is flat-out defeated by *Defendants' own admission* that nine of the Trustee's seventeen causes of action are "core" claims under the Bankruptcy Code. The other claims are also "core," due to their intertwining with the admittedly "core" claims and their nature as counterclaims to Defendants' own claims in the Bankruptcy Case.

Put simply, Defendants' arguments lack merit, and the weight of authority guiding this Court *clearly* demonstrates that this is *not* a situation in which a transfer of the case out of the Bankruptcy Court is warranted. The Court should deny the Motion and refuse to withdraw the reference.

## BACKGROUND FACTS

### A.    Divine.

Divine (which was later renamed enivid, inc.) was formed in 1999 as an Internet-holding company, formed to invest in start-up and early stage technology companies, and then reap the rewards as its investment companies went public.  Trustee's Adversary Complaint ("D&O Complaint" or "Compl.") ¶ 19 and 26 (attached to the Motion as Exhibit C).  Divine was never able to take a single one of its investments public.  Compl. ¶ 2.  As such, it was an outright failure.

Divine then reinvented itself to become an operating company generating profits from operations.  Compl. ¶ 3.  Rather than focus on operations, however, the Defendant directors and officers (the "D&Os") embarked on a frenetic acquisition spree.

As Divine pursued yet another flawed strategy, its D&Os repeatedly disregarded numerous warning signs that they themselves identified.  Compl. ¶ 4.  As Divine's condition continued to worsen, Divine's D&Os ignored their own business judgment and turned their attention to protecting themselves and their own interests rather than the interests of Divine and its creditors.  *Id.*  In doing so, Divine's D&Os recklessly, intentionally and knowingly breached their duties to Divine and Divine's creditors.  *Id.*  Moreover, they ensured Divine's downfall.

Indeed, Divine did not recover.  It squandered close to $1 billion in cash in less than three years.  On February 23, 2003, enivid, inc., f/k/a divine, inc. and five related entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330. The remaining debtor entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on April 2, 2003.  All of the cases were substantively consolidated in the United States Bankruptcy Court for the District of Massachusetts.  The Bankruptcy Court

confirmed the Creditors Committee's Chapter 11 Plan of Liquidation (the "Committee Plan") on December 8, 2004, and it became effective on December 20, 2004.

**B.    The D&O litigation.**

On December 17, 2004, Stewart Grossman, the Examiner appointed by the Bankruptcy Court to pursue any and all claims against the D&Os, filed this Adversary Proceeding in the Bankruptcy Court against four of Divine's D&Os: Andrew J. Filipowski, Paul Humenansky, Michael Cullinane and Jude Sullivan (the "D&O Litigation").[1]  The Complaint in the D&O Litigation alleges, among other things, causes of action against those D&Os for breach of the fiduciary duty of loyalty; breach of the fiduciary duty of care; breach of the fiduciary duty of good faith; and the tort of deepening insolvency, all causing damages to the creditors of Divine. Compl. ¶¶ 252-308.

Although the specific amount of damages sought in the Complaint is not set out, it is currently estimated that the allowed claims against the Estates recoverable from the damages caused by the D&Os' breaches of their duties to Divine is at least $150 million.

Upon Confirmation of the Committee Plan, James B. Boles, the Liquidation Trust Representative, was substituted as Plaintiff in the D&O Litigation pursuant to an assignment from Mr. Grossman.

On March 18, 2005, in lieu of answers, all Defendants filed motions to dismiss the D&O Complaint.  Those motions are pending before the Bankruptcy Court.

**C.    The Shareholder Actions.**

The existing shareholder actions referred to and relied upon by Defendants in the Motion (the "Shareholder Actions") are the end result of a number of individual suits filed by various

---

[1]  At the same time, the Examiner entered into a tolling agreement with the remaining members of Divine's former board of directors, postponing his suit against them based on similar causes of action until some future date.

Divine shareholders against some of Divine's D&Os in Illinois state and federal court. After consolidation and removal, the *Bobbitt* and *Turner* lawsuits were transferred to the United States District Court, District of Massachusetts, Eastern Division, where they are now pending before this Court as *Bobbitt, Individually and On Behalf of All Others Similarly Situated v. Filipowski, et al.*, No. 04-12263-PBS, and *Turner, On Behalf of Himself and All Others Similarly Situated v. Filipowski, et al.*, No. 04-12294-PBS.

The Shareholder Actions are purported class action suits seeking recovery for alleged violations of federal securities laws. Specifically, the lead plaintiffs in the Shareholder Actions purport to represent a class of investors who invested $100 million in Divine's initial public offering. *See* Second Consolidated Class Action Complaint for Violations of the Federal Securities Law, filed in the *Bobbitt* case, attached to the Motion as Exhibit A. These suits seek damages against certain D&Os individually, and seek recovery for shareholders in their individual capacity for damages allegedly sustained by them directly. In other words, the Shareholder Actions do *not* seek recovery on behalf of Divine or its creditors, as the D&O Litigation does.

The Shareholder Actions have not progressed beyond the initial pleading stage, and to date the classes have not been certified. At present, the Defendants in those actions have filed motions to dismiss, but those motions have not yet been decided.

> **D.     The Motion to Stay the Shareholder Actions.**

On March 17, 2005, the Trustee filed a separate Adversary Proceeding (No. 05-01277) in the Bankruptcy Court, seeking to enjoin the lead plaintiffs in the Shareholder Actions from proceeding any further in their lawsuits pending resolution of the D&O Litigation (the "Stay Motion") (A true and correct copy of the Stay Motion is attached hereto and incorporated herein

as **Exhibit A**).   The basis for the Stay Motion is that, while the D&O Litigation and the Shareholder Actions pursue different legal theories, the plaintiffs in the Shareholder Actions are seeking recovery from the same pool of assets – the proceeds of certain D&O Insurance Policies and the Defendants' personal assets – that would otherwise be potentially available to the Trustee for distribution *first* to Divine's creditors pursuant to the Bankruptcy Court's order of priority upon recovery in the D&O Litigation.   The Shareholder Actions potentially threaten to subvert the Bankruptcy Code's order of priority by providing equity holders a recovery from assets that would otherwise be first distributed to creditors.   As such, the Shareholder Actions would have a significant effect on the Bankruptcy Estate and the amount of money that may ultimately be available to Divine's creditors.

The Stay Motion is set for hearing before the Bankruptcy Court on May 18, 2005.

## ARGUMENT

### I.    Defendants' Motion should be dismissed as premature.

This Court need not – and, indeed, should not – decide the Motion at this time, as it is premature.   Specifically (and as discussed in further detail below), the critical threshold determination that must be made in deciding whether to withdraw the reference is whether the claims in the underlying action are "core" or "non-core." *See In re Envisionet Computer Servs., Inc.,* 276 B.R. 7, 10 (D. Me. 2002).   This determination should be made by the *Bankruptcy Court*, not the District Court. *See In re Enron Corp.,* 318 B.R. 273, 275 (S.D.N.Y. 2004) (citing lack of initial core/non-core determination by bankruptcy court as factor in denying withdrawal motion); *Envisionet,* 276 B.R. at 10-12 (dismissing withdrawal motion, without prejudice, as premature, due to absence of core/non-core determination by bankruptcy court; remanding to bankruptcy court for core/non-core determination and other appropriate proceedings); *In re C-TC*

*9th Ave. P'ship,* 177 B.R. 760, 766 (N.D.N.Y.), *recons. denied*, 182 B.R. 1 (N.D.N.Y 1995) (deferring decision on withdrawal motion pending core/non-core determination by bankruptcy court).

In this case, the Bankruptcy Court has made no such determination.[2]  And, as the cases cited above show, this Court should not make that determination – the Bankruptcy Court is expressly mandated to do so.  As such, this Court should decline to rule on the Motion, and, instead, should dismiss it until such time as the Bankruptcy Court does so.

Additionally, as noted above, the Stay Motion presently is pending before the Bankruptcy Court, and will be heard on May 18th.  In the event that it is granted – as the Trustee is confident that it will – the Shareholder Actions will be stayed, thereby undercutting the very basis for Defendants' Motion.  As such, the Court should, *at the very least*, defer its ruling until after the Stay Motion has been decided.

Finally, and also as noted above, all Defendants have moved the Bankruptcy Court to dismiss the D&O Complaint.  Should those motions be granted (which the Trustee is confident they will *not* be), the issues that might be transferred to this Court would be narrowed or eliminated altogether.  Again, then, this Motion is premature, in that the Bankruptcy Court presently is in a position, based on the pleadings before it, to make significant rulings with regard to the case.  *See In re Formica Corp.,* 305 B.R. 147, 150-51 (S.D.N.Y. 2004) (discussing pendency of motions to dismiss before bankruptcy court as factor in denying motion for withdrawal of reference); *In re Nady,* 138 B.R. 608, 610 (D. Nev. 1992) (denying withdrawal of reference and noting advantage of having bankruptcy judge "rule on discovery matters and submit its conclusions and recommendations as to dispositive motions such as motions to

---

[2]  Under Bankruptcy Rule 7012(b), Defendants may deny in their answer that the claims are core, which would then allow the Bankruptcy Court to decide the issue.

dismiss. . .").

For all these reasons, this Court should decline to rule on the Motion, and instead should dismiss it as premature.

## II. Even if the Court considers the Motion, each and every relevant factor requires that it be denied.

### A. The standards for withdrawal of the reference under 28 U.S.C. § 157(d) are well-settled, and they demonstrate conclusively that withdrawal of the reference is *not* warranted.

Pursuant to 28 U.S.C. § 157, as implemented by District Court Local Rule 201, all cases and proceedings arising under Title 11 are referred to the Judges of the Bankruptcy Court. *See* 28 U.S.C. §§ 157(a)-(b); D. Mass. Local R. 201. Additionally, the Bankruptcy Court enjoys limited jurisdiction over claims sufficiently "related to" the bankruptcy case, within the meaning of the Bankruptcy Code. *See* 28 U.S.C. § 157(c)(1).

28 U.S.C. Section 157(d), in turn, provides that the District Court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The language and legislative history of Section 157(d) make clear that "Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless withdrawal was essential to preserve a higher interest." *United States v. Kaplan,* 146 B.R. 500, 502 (D. Mass. 1992). Accordingly, withdrawal has been construed as a "narrow exception" to Congress' general intention that bankruptcy proceedings be heard by bankruptcy courts. *In re Ponce Marine Farm, Inc.,* 172 B.R. 722, 724 (D.P.R. 1994); *see also, e.g., In re Clark-Franklin-Kingston Press, Inc.,* Civ. Nos. 90-11231 WF, 90-11232 WF, 1993 WL 160580, at *4 (D. Mass. Apr. 21, 1993) (describing withdrawal from the Bankruptcy Court as "an exception to the general rule").

Except in "unusual circumstances," *In re AKF Foods, Inc.,* 58 B.R. 1016, 1018 (D. Me.

1986), courts have been "cautious" in their application of Section 157(d), in order to insure that the withdrawal exception does not swallow the general rule favoring adjudication of bankruptcy matters by bankruptcy courts. *Kaplan,* 146 B.R. at 502-03; *accord, e.g., Ponce Marine,* 172 B.R. at 724 n.2. In keeping with this "cautious" approach, courts have uniformly held that the moving party bears the burden of demonstrating that there is cause for withdrawal of the reference. *See, e.g., In re Jackson Brook Institute, Inc.,* 280 B.R. 779, 782 (D. Me. 2002); *Envisionet,* 276 B.R. at 10; *Kaplan,* 146 B.R. at 503. As will be shown below, Defendants wholly fail to meet the causation requirement under the relevant test.

However, a threshold question in this analysis – which, as noted above, should be decided by the Bankruptcy Court – is whether the claims in question are "core" or "non-core." *See Envisionet,* 276 B.R. at 10; *see also, e.g., Corporacion de Servicios,* 227 B.R. at 765 (quoting *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (4th Cir. 1993), *cert. dismissed,* 511 U.S. 1026 (1994)). The core/non-core determination is particularly significant in cases where, as here, the Defendants have submitted themselves to the jurisdiction of the Bankruptcy Court by filing Proofs of Claim. *See Envisionet,* 276 B.R. at 10. This is because, as the *Envisionet* court explained, "[u]ntil a determination on the core/non-core nature of the claims is made by the bankruptcy court, the factors affecting withdrawal cannot be properly analyzed." *Id.*

**B.    The Trustee's claims in the D&O Litigation are all core, and this militates against withdrawal of the reference.**

Defendants in their brief falsely characterize the "majority of claims" contained in the Adversary Complaint as being non-core. Def. Br. at 3. This is wrong. In fact, Defendants themselves concede that nine of the seventeen claims in the Adversary Complaint are core. *See id.* at 7-8. Under settled bankruptcy law, the remaining eight state-law based claims are core as well.

### (i)     The state law claims are "core" due to their intertwining with undisputedly core claims.

Each of the Defendants has filed one or more proofs of claim against the Estate.  In so doing, under settled law, each of the Defendants submitted himself to the Bankruptcy Court's claims adjudication process.  *See, e.g., In re Manville Forest Prods. Corp.,* 896 F.2d 1384, 1389-90 (2d Cir. 1990); *In re Adelphia Communications Corp.,* 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004); *In re Continental Fin. Resources, Inc.,* 149 B.R. 260, 262 (Bankr. D. Mass.) (Feeney, J.), *aff'd,* 154 B.R. 385 (D. Mass. 1993).

As Defendants themselves note, *see* Def. Br. at 7-8, the outcome of five of the nine undisputedly core claims in the D&O Complaint is dependent on the outcome of the Trustee's state-law claims against the Defendants.  This intertwining and interdependency of core bankruptcy claims with otherwise non-core state-law claims has the effect of rendering the state-law claims core, because they are inextricably bound up with the core claims.  *See, e.g., Iridium Operating LLC,* 285 B.R. 822, 830 (S.D.N.Y. 2002) (in adversary proceeding featuring five core bankruptcy claims and five "traditionally non-core" claims of breach of contract and fiduciary tort, holding non-core claims to be core claims because they "ar[o]se from the same operative facts as the core claims and [the defendant's] proofs of claim, administrative expenses, and affirmative defenses").

Specifically, and by way of example, each of the Defendants has made claims in the Bankruptcy Case for contractual indemnity for the very breach of fiduciary duty claims being brought against them by the Trustee.  See Compl. ¶¶ 309-316.  In order for the Bankruptcy Court to resolve the indemnity issue, and any depletion of the Bankruptcy Estate's assets to satisfy such indemnity claims, it will be necessary for the Bankruptcy Court to determine: (1) whether a breach of duty occurred; (2) whether the indemnity provisions apply to the conduct constituting

the breach; (3) whether the indemnity provisions were actually triggered by a finding of liability; and (4) where the Defendant's right to indemnity (if any) falls within the scheme of priority of distribution of Estate assets.   There is quite simply *no way* to avoid the fact that the Bankruptcy Court *will* be faced with each and every one of these issues.   As such, the breach of fiduciary duty claims are so tightly woven with the Defendants' core claims for indemnity that they, themselves, necessarily have become core, as well.

In sum, the fact that all of the adversary claims are core "militates heavily" against withdrawal of the reference.   *Corporacion de Servicios,* 227 B.R. at 766.[3]

> **(ii)    As counterclaims to Defendants' Proofs of Claim, the Trustee's state law claims are "core."**

Additionally, a counterclaim brought by a debtor as a result of a claim filed against the estate is likewise part of the bankruptcy claims adjudication process, and thus is also a "core" matter.   *See In re Fang Operators, Inc.,* 158 B.R. 643, 647 (Bankr. N.D. Tex. 1993); *Continental Financial Resources,* 149 B.R. at 262-63.   The eight state-law claims here are counterclaims against the Defendants' proofs of claim for alleged breaches of their employment contracts and unreimbursed business expenses.   *See, e.g., In re Bar M Petroleum Co.,* 63 B.R. 343, 347 (Bankr. W.D. Tex. 1986) (characterizing Trustee's state-law claim as counterclaim to creditor's

---

[3] At page 8 of their brief, Defendants cite a number of cases in support of the proposition that "courts routinely withdraw the reference even where core claims are at issue."  Each of those cases is distinguishable from this Adversary Proceeding, however.  In *In re Almac's, Inc.,* 202 B.R. 648, 659 (D.R.I. 1996), only one of the multiple defendants had filed a proof of claim.  This is different from the present case, where each of the Defendants has submitted himself to the jurisdiction of the Bankruptcy Court by filing a proof of claim – which is significant because, as discussed in Point II(B)(i) herein, a party filing a proof of claim submits itself to the Bankruptcy Court's claims adjudication process.  Next, *In re Star Creditors' Liquidating Trust,* Nos. 01-0830-MFW, *et al.,* 2004 WL 406353 at *1-2 (D. Del. Mar. 3, 2004), is inapposite because the court there declined to make any core/non-core determination at all.  The remainder of the cases are also factually or legally distinguishable.  *See Congress Credit Corp. v. AJC Int'l, Inc.,* 42 F.3d 686, 690 (1st Cir. 1994) (parallel lien action subject to withdrawal was "most probably . . . not even a 'related' proceeding"); *Big Rivers Elec. Corp. v. Green River Coal Co.,* 182 B.R. 751, 755 (W.D. Ky. 1995) (withdrawing reference based on "overlapping . . . facts, transactions and issues" lacking in this case); *In re Pan Am,* 163 B.R. 41, 43-44 (S.D.N.Y. 1993) (withdrawing reference where bankruptcy court's schedule prevented it from expeditiously trying matter); *Wedtech,* 81 B.R. at 239 (like *Big Rivers,* withdrawing reference based on "overlapping . . . facts, transactions and issues" lacking in this case).

proof of claim).  This renders the state-law claims core.

      **C.**    **Withdrawal of the reference is not warranted under the *Holland America* factors.**

As noted above, the movant also bears the burden of proving that there is "cause" for withdrawing the reference.

The First Circuit has not yet provided any definitive test of Section 157(d)'s "cause" requirement.  *See Envisionet,* 276 B.R. at 10 ("'The First Circuit has not yet addressed the 'cause' requirement'") (quoting *Ponce Marine,* 172 B.R. at 725 n.3); *see also Congress Cred. Corp. v. AJC Int'l, Inc.,* 42 F.3d 686, 691 (1st Cir. 1994) (citing Section 157(d)).  Many courts in this Circuit have found it useful, however, to consider the six factors articulated by the Fifth Circuit in *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir. 1985).  *See, e.g., Jackson Brook,* 280 B.R. at 782; *In re Corporacion de Servicios Medico Hospitalarios de Fajardo,* 227 B.R. 763, 765 (D.P.R. 1998); *Clark-Franklin-Kingston Press,* 1993 WL 160580, at \*4.  These factors are (1) judicial economy; (2) promotion of uniformity of bankruptcy administration; (3) reduction of forum shopping and confusion; (4) conservation of debtor and creditor resources; (5) expedition of the bankruptcy process; and (6) whether a jury trial has been requested.  *See Holland America,* 777 F.2d at 999.

Applying the *Holland America* analysis, it becomes apparent that withdrawal of the reference is not appropriate here, and, as such, the Motion should be denied.

      **(i)**    **Contrary to Defendants' arguments, judicial economy would *not* be served by transferring the case from the Bankruptcy Court.**

Defendants make much in their brief of the *Holland America* judicial economy factor, almost to the exclusion of all other factors.  *See* Def. Br. at 5-6.  Specifically, Defendants argue extensively that referral of the Adversary Proceeding to the District Court will serve judicial

economy by avoiding duplication of proceedings between the Shareholder Actions and the D&O Litigation.[4]  *Id.*  In fact, the exact opposite is true: judicial economy would best be served by permitting the Bankruptcy Court to retain jurisdiction over the D&O Litigation.

       **(a)**    **The D&O Litigation and the Shareholder Actions are not even**
                  ***similar*, much less "identical."**

First, Defendants allege a supposed near-identity between the D&O Litigation and the Shareholder Actions.  *See* Def. Br. at 2-3, 6, Ex. D.  To the contrary, the actions are far from "identical."  Indeed, the concordance prepared by Defendants, comparing overlaps between the *Bobbitt* Complaint and the D&O Complaint, itself demonstrates that the vast majority – 170 out of 241 – of the paragraphs in the *Bobbitt* Complaint contain no analog in the D&O Complaint.  *See* Exhibit D to the Motion.  The *Turner* Complaint – lacking the *Bobbitt* Complaint's wholesale cribbing of facts from the D&O Complaint – is even less similar.

More fundamentally, the Shareholder Actions and the D&O Litigation differ widely in *claims* and in *parties*, as well as in *facts*.  Factually, the Shareholder Actions stand or fall on

---

[4] Indeed, Defendants include a *page-length* string cite in support of this argument.  Def. Br. at 5.  All of these cases, however, are easily distinguishable from the case at bar.  In several of them, the courts found that all or part of the claims for which the reference was sought to be withdrawn were either non-core or not even "related to" the bankruptcy at all.  *See In re Complete Mgmt., Inc.,* No. 02 Civ. 1736 (NRB), 2002 WL 31163878, at *3 (S.D.N.Y. Sept. 27, 2002) (discussing doubtful where "questions of fact of negligence claim as core proceeding); *In re Elder-Beerman Stores Corp.,* Nos. 95-33643, *et al.,* 1997 WL 1774875, at *4 (S.D. Ohio Aug. 1, 1997) (holding adversary proceeding to be non-core); *In re Bennett Funding Group, Inc.,* 258 B.R. 67, 76 (Bankr. N.D.N.Y. 2000) ("it is evident that the Court is confronting matters which are both core and non-core"); *see also Congress Credit,* 42 F.3d at 689-90 ("Most probably . . . the [parallel] lien action is not even a 'related' proceeding," such that "the result in the lien proceeding can have no impact whatever on the bankruptcy estate).  Since, as discussed in Point II(B) herein, all of the claims raised in the D&O Complaint are core claims, these cases have no application.

Other cases cited by Defendants turn on near-identity of facts and issues between the bankruptcy and district court proceedings.  *See DeCicco v. Willow Grove Bank,* No. Civ. A.  02-7855, 2004 WL 2150980 at *3 (E.D. Pa. Sept. 21, 2004) (withdrawing reference where "questions of fact overlap[ped] almost entirely" between district court and bankruptcy court filings); *Big Rivers,* 182 B.R. at 755 (adversary complaint and district court action shared "many of the same" facts and legal issues); *Wedtech.,* 81 B.R. at 239 (finding "overlapping . . . facts, transactions and issues" to be good cause for withdrawal of reference).  As discussed in Point II(C)(i)(a) herein, however, the D&O Litigation differs widely from the Shareholder Actions in facts, claims, and parties.  Finally, the district court in *Pan Am.*, withdrew the reference there on the grounds of "court efficiency" because the bankruptcy court's schedule would not permit it to expeditiously try the adversary proceedings.  *See* 163 B.R. at 43-44.  No such factor is present here.

proving intentional misrepresentations on the part of the defendants in those actions in *public* statements and filings. In the D&O Litigation, a *vastly* wider universe of facts is alleged to prove actions constituting negligence, gross negligence, failure to act, breach of duty, etc. – however, *none* of these facts require (1) intentional fraud, or (2) public statements. In other words, the facts involved in the Shareholder Actions are, *at best*, a mere subset of those involved in the D&O Litigation, and they are very different in character.

Legally, the claims asserted in the actions are just as divergent. The D&O Complaint asserts eight state-law causes of action sounding in breaches of the fiduciary duties of loyalty, care, and good faith, as well as the tort of deepening insolvency. It also asserts nine bankruptcy claims – six sets of objections to various Proofs of Claim filed by the Defendants against Divine, two claims of fraudulent and preferential transfers, and one claim for subordination. The *Bobbitt* complaint, by contrast, asserts six causes of action, all alleging only breaches of various *federal securities statutes*. The *Turner* complaint asserts three causes of action, likewise all for breach of *federal securities statutes*. There is *not one single cause of action* in common between the D&O Litigation and the Shareholder Actions. Moreover, the Shareholder Actions involve *individual* claims brought by shareholders in their own right for alleged fraud committed against *them*; whereas the D&O Litigation involves claims brought by the Trustee for wrongs done *to the Estate*. The character of these claims could not be more different.

As for parties, the plaintiff in the D&O Litigation is the Trustee on behalf of the Liquidation Trust, and the Defendants are Filipowski, Humenansky, Cullinane, and Sullivan.[5] Obviously, the plaintiffs in the Shareholder Actions – Divine shareholders – are completely different from the plaintiff in the D&O Litigation – the Trustee. But the defendants also differ

---

[5] And, as noted above, several more Defendants could be added at any time should the tolling agreement be terminated.

considerably.  For example, in the *Bobbitt* action, the only defendants are Filipowski and Cullinane – Humenansky and Sullivan are not defendants there at all.  The *Turner* action, by contrast, along with Filipowski, Cullinane, and Humenansky, adds eight more defendants (former Divine directors) – and, again, does *not* include Sullivan.

Put simply, the cases can never be fully consolidated, *since the parties are not the same*. Similarly, the claims – and their concomitant legal issues – are not the same, which would erase any advantage in efficiency to be had by having one judge preside over all three cases.  *See Corporacion de Servicios,* 227 B.R. at 766-67 (noting that withdrawal of reference would not promote uniformity of bankruptcy administration where competing cases featured differing legal issues).  Accordingly, there is simply no particular advantage in judicial efficiency in having one court hear all cases.  At any rate, the mere fact that cases may share certain related factual and/or legal issues does not alone warrant withdrawal of the reference.  *See In re AKF Foods, Inc.,* 58 B.R. 1016, 1018 (D. Me. 1986).

> **(b)    The Stay Motion will negate the Defendants' concerns about "duplication of actions."**

As noted above, the pendency of the Stay Motion strongly supports retention of jurisdiction by the Bankruptcy Court.  In the Stay Motion, the Trustee has asked the Bankruptcy Court to stay the Shareholder Actions to prevent the shareholders from interfering with the Trustee's efforts to gather up all of the Estate's potential assets for ultimate distribution to creditors, according to the priority system set forth in the Bankruptcy Code and consistent with the dictates of Divine's Committee Plan.  Specifically, the Trustee argues that the Bankruptcy Court should not allow a race to the courthouse to determine whether Divine's shareholders or its creditors should have the first – and, indeed, probably the *only* – opportunity to access the limited pool of D&O insurance proceeds and personal assets, which they are both seeking to

recover.  Again, this is an issue that *must* be decided by the Bankruptcy Court.

If – and more significantly, when – the Stay Motion is granted, each and every one of Defendants' concerns about "duplication of actions" will be put to rest.  As such, there will be *no* need for withdrawal of the reference.

>    **(c)      The Bankruptcy Court's extensive familiarity with the case militates toward leaving the D&O Litigation in that forum.**

Defendants also argue, incorrectly, that transferring the D&O Litigation to a new court – one with *no* familiarity with the facts or issues in the Bankruptcy Case – will somehow aid judicial economy simply because the District Court will now have *three* new cases to hear rather than two.  This is simply not the case.

Indeed, the Defendants conveniently ignore the undeniable fact that the Bankruptcy Court is better placed to most effectively hear and decide the D&O Litigation.  The Divine petition was filed over two years ago.  During that time, Judge Feeney has presided over numerous matters entailing familiarity with the facts and circumstances inherent in the bankruptcy filing, including many of the facts and issues relating to the D&O Litigation.  Additionally, Judge Feeney appointed the Examiner in the Bankruptcy Case to explore the viability of claims against Divine's former directors and officers, presided over the Examiner's ten-month investigation (during which time she was supplied with periodic reports from the Examiner) and reviewed the Examiner's Final Report, which formed the basis of the D&O Complaint.  Accordingly, the Bankruptcy Court affords the advantage of already having familiarity with the facts and issues raised in the D&O Litigation.

>    **(d)      Even if non-core matters were present, their mere existence would not warrant transfer of the case out of the Bankruptcy Court on grounds of judicial economy.**

Finally, Defendants argue that withdrawal of the reference is warranted because the D&O

Complaint contains non-core claims which would have to be submitted to the District Court for review and final judgment. This argument fails, since, as noted above, all of the claims in the Adversary Complaint are core, and may be disposed of with finality by the Bankruptcy Court. Even if some of the D&O Complaint's claims were non-core, however, the possibility of a need for review by the District Court of the Bankruptcy Court proceedings would not merit any withdrawal of the reference. As provided for by the Bankruptcy Code, of course, Bankruptcy Courts hear non-core claims every day. The Defendants' approach would cause the Bankruptcy Courts' non-core jurisdiction to evaporate, since the "logical extension of that argument is that [the District Court] should withdraw reference on any proceeding in the Bankruptcy Court which is reviewable by [the District Court]." *AKF Foods,* 58 B.R. at 1019. The Defendants' argument should be rejected.

For all these reasons, it is simply *not true* that judicial economy would be served by transferring the case out of the Bankruptcy Court – in fact, the opposite is true. For this reason, the Motion should be denied.

> **(ii)    The factors of uniformity of bankruptcy administration, conservation of debtor and creditor resources, and expedition of the bankruptcy process all weigh against withdrawal of the reference.**

These three factors, all of which share similar characteristics, all cut strongly in favor of retention of jurisdiction by the Bankruptcy Court. The claims raised by the Trustee in the D&O Litigation are the product of a 10-month investigation by the Examiner, and are among the most significant claims possessed by the Estate. The specific amount of damages recoverable under the Adversary Complaint is not yet clear, but is presently thought to exceed $150 million. Thus, uniformity of bankruptcy administration, as well as conservation of debtor and creditor resources, would be best served by continuing jurisdiction in the Bankruptcy Court. Moreover,

Judge Feeney has been presiding over this bankruptcy case for more than two years, reviewing hundreds of pages of briefs and pleadings relating in whole or in part to these adversary claims. Withdrawal of the reference as to these claims would inevitably result in at least some delay as the District Court brings itself fully up to speed. *See, e.g., Ponce Marine,* 172 B.R. at 725 (noting that, where Chapter 11 cases had been pending in bankruptcy court for more than 18 months, "[a] withdrawal of reference from the bankruptcy court . . . would surely result in delay of the case's progression"). As such, these factors serve further to demonstrate that the Motion should be denied.

> (iii)    **The fact that, not only have the Defendants *not* requested a jury trial, but they *cannot* request one, also weighs in favor of denying the Motion.**

The final *Holland America* factor weighing against the withdrawal of the reference is the fact that a defendant has not requested a jury trial. Here, it is undisputed that the Defendants have not done so. More importantly, they *cannot* do so. Since they have filed Proofs of Claim in the Bankruptcy Court, Defendants have waived their right to a jury trial on all causes of action related to their claims. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58-59 & n. 14 (1989); *In re CBI Holding Co.,* 311 B.R. 350, 365 (S.D.N.Y. 2004); *In re Leslie Fay Cos.,* 222 B.R. 718, 720 (S.D.N.Y. 1998), *aff'd sub nom. Falbaum v. Leslie Fay Cos.*, 182 F.3d 899 (2d Cir. 1999), *cert. denied*, 528 U.S. 1075 (2000). And, since (as shown above) the remaining state-law claims are inextricably intertwined with the bankruptcy claims, the Defendants are not entitled to a jury trial on those claims, either. *See Langenkamp v. Culp,* 498 U.S. 42, 44-45 (1990) (holding that creditor who has submitted claim against bankruptcy estate has no right to jury trial in preference action against it); *CBI Holding,* 311 B.R. at 365 (noting that if creditor who has filed claim "is met with an adversary proceeding, the resolution of which affects the

restructuring of debtor-creditor and creditor-creditor relations, then the creditor loses its Seventh Amendment rights, even if the adversary proceeding concerns traditionally legal claims"); *In re Asousa P'ship,* 276 B.R. 55, 73 (Bankr. E.D. Pa. 2002) (holding that, "by filing its Proof of Claim, [creditor] submitted to the equitable jurisdiction of [the Bankruptcy] Court to decide" two breach of lease counterclaims arising out of same transaction as creditor's proof of claim).  As such, there is *no possibility* that this Court will *ever* be requested or required to preside over a jury trial of the D&O Litigation.  This factor provides yet another basis on which the Motion should be denied.[6]

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that this Court deny the Defendants' Motion to Withdraw Reference to the Bankruptcy Court.  The Trustee further respectfully requests that the Court provide such further relief to which he might show himself entitled.

---

[6] At any rate, even the presence of a right to jury trial is not an impediment to retention of jurisdiction by the Bankruptcy Court where, as here, other factors tip against withdrawal of the reference.  *See In re Ames Dep't Stores, Inc.,* 190 B.R. 157, 163 (S.D.N.Y. 1995) (holding that, "even assuming for the purposes of this motion that [movant] is entitled to a jury trial, I find that withdrawal of the reference would be premature"); *In re Gaston & Snow,* 173 B.R. 302, 307 (S.D.N.Y. 1994) (denying withdrawal motion and rejecting any "rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial").

Dated: April 15, 2005

The Liquidation Trust,
by the Liquidation Trust Representative

By its attorneys,

Michael D. Warner, Esq. (TX Bar No. 00792304)
Lewis T Stevens, Esq. (TX Bar No. 24031366)
Kenneth C. Greene, Jr., Esq. (TX Bar No. 00787589)
**WARNER STEVENS, L.L.P.**
1700 City Center Tower II
301 Commerce Street
Fort Worth, TX 76102
Telephone: 817.810.5250
Facsimile: 817.810.5255

PRO HAC VICE MOTIONS PENDING

and

  /S/Charles P. Kindregan
Charles P. Kindregan (BBO # 554947)
**LOONEY & GROSSMAN,  L.L.P.**
101 Arch Street
Boston, Massachusetts 02110
Telephone: 617.951.2800
Facsimile: 617.951.2819

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 [Confirmed Plan] |
| | ) | |
| ENIVID, INC., et al.,[1] | ) | Case Nos. 03-11472-JNF and |
| | ) | 03-11474-JNF through |
| | ) | 03-11478-JNF and |
| Reorganized Debtors. | ) | 03-12681-JNF through |
| | ) | 03-12715-JNF |
| _____ | ) | |
| | ) | [Substantively consolidated] |
| JAMES B. BOLES, LIQUIDATION TRUST | ) | |
| REPRESENTATIVE OF THE LIQUIDATION | ) | |
| TRUST, AS ASSIGNEE OF STEWART | ) | |
| GROSSMAN, EXAMINER OF IN RE | ) | |
| ENIVID, INC., | ) | Adversary Proceeding |
| | ) | No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIKE TURNER, on behalf of himself and all | ) | |
| others similarly situated, SHARON BOBBITT, | ) | |
| individually and on behalf of all others similarly | ) | |
| situated, JAMES TITO, FRANK WADDELL, | ) | |
| JAMES F. HOWARD, on behalf of himself and | ) | |
| all others similarly situated, and CHRIS BROWN, | ) | |
| on behalf of himself and all others similarly | ) | |
| situated, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MOTION FOR PELIMINARY INJUNCTION

---

1   The Substantively Consolidated Reorganized Debtors are the following entities: enivid, Inc., Open Market, Inc. enivid Managed Services, Inc., enivid DR Corporation, Viant Corporation and eShare Communications, Inc., Delano Technology Corp., enivid technology ventures, iCentral, Inc., Inventions, Inc., enivid/Emicom, Inc., SageMaker, Inc., Waypoint Software Corporation, Preceptual Robotics, Inc., enivid Global Services, Inc., eprise Corporation, Denali, Inc., Melita Finance, Inc., SMI Holding Corp., Retrieval Technologies, Inc., enivid international, Inc., enivid software, inc., Opinionware.com, Inc., Melita Intellectual Property, Inc., smallwonders software!, inc., Open Market Securities Corporation, Futuretense Corporation, RWT Corporation, LOTN, Inc., Eprise Securities Corp., SageMaker (Europe), Inc., Global Recall, Inc., databites, inc., enivid interVentures, Inc., enivid Ireland, Inc., Folio Corporation, Venture Capital Unlimited Acquisition, enivid Synchrony Communications, Inc., Softmetric, Inc., Air enivid, Inc., SM2 Holding Corp.  (collectively, the "Debtors").

TO THE HONORABLE JOAN N. FEENEY, CHIEF UNITED STATES BANKRUPTCY
JUDGE:

Plaintiff, James B. Boles, the Liquidation Trust Representative (the "Trustee") of the
Liquidation Trust dated December 20, 2004, established pursuant to the Official Committee of
Unsecured Creditors' Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code
Dated September 30, 2004, as Modified November 23, 2004 (the "Plan"), as Confirmed by Order
of the Bankruptcy Court dated December 8, 2004, and which Plan became Effective on
December 20, 2004, moves for entry of a preliminary injunction staying prosecution of three
securities class action lawsuits brought by lead plaintiffs Mike Turner, Sharon Bobbitt, James
Tito, Frank Waddell, James F. Howard and Chris Brown, on behalf of themselves and all others
similarly situated (the "Shareholder Plaintiffs"). In support of this motion, the Trustee states as
follows:

1.      On December 17, 2004, Stewart Grossman, the Examiner appointed by the Court
to pursue any and all claims against the D&Os on behalf of Divine's creditors, filed an
Adversary Proceeding in this Court against four of Divine's D&Os: Andrew J. Filipowski, Paul
Humenansky, Michael Cullinane and Jude Sullivan (the "D&O Litigation"). The Complaint in
the D&O Litigation alleges, among other things, causes of action against those D&Os for breach
of the fiduciary duty of loyalty; breach of the fiduciary duty of care; breach of the fiduciary duty
of good faith; and the tort of deepening insolvency.

2.      A number of individual suits were filed by various Divine shareholders against
Divine D&Os in Illinois state and federal court alleging violations of federal securities laws (the
"Shareholder Actions"). After consolidation and removal, the Turner and Bobbitt lawsuits were
transferred to the United States District Court, Northern District of Massachusetts, Eastern
Division, where they are now pending before Judge Saris as *Bobbitt, Individually and On Behalf*

*of All Others Similarly Situated v. Filipowski, et al.*, No. 04-12263-PBS, and *Turner, On Behalf of Himself and All Others Similarly Situated v. Filipowski, et al.*, No. 04-12294-PBS.[2]  The *Howard and Brown* action was ordered transferred from district court to the Bankruptcy Court in the Northern District of Illinois in February of 2004; however, as of the date of the filing of this Motion, that transfer has not occurred.

3.     In connection with both the D&O Litigation and the Shareholder Actions, Divine's D&Os have sought defense and indemnification coverage from the carriers of Divine's directors' and officers' liability insurance policies (the "D&O Insurance").

4.     Pursuant to Section 105(a) of the Bankruptcy Code, 11 U.S.C. Section 101, et seq., the Trustee seeks a preliminary and permanent injunction staying the continued prosecution of the Shareholder Actions, including any settlement, until the D&O Litigation has been completed.  Such an injunction is appropriate because the Shareholder Plaintiffs are seeking recovery from the same pool of assets – the proceeds of the D&O Insurance and the Defendants' personal assets – that would otherwise be potentially available to the Trustee for distribution to the Debtors' creditors.  As such, the Shareholder Actions threaten to have a significant effect on the bankruptcy estate and the amount of money that may ultimately be available to the Debtors' creditors.  Similarly, continued prosecution of the Shareholder Actions threatens to impact the bankruptcy estate by virtue of the mounting defense costs being paid out of the D&O Insurance, which reduces the insurance proceeds potentially available to the estate and to the creditors.

5.     Because an adjudication or a settlement in the Shareholder Actions could affect the amount of property in the bankruptcy estate, this case is "related to" the bankruptcy action and, thus, the Court has jurisdiction to stay all proceedings in the Shareholder Actions pending

_____

2  On March 8, 2005, the Plaintiffs in the *Bobbitt* case filed a motion to consolidate the *Bobbitt* and *Turner* actions. As of the date that this Motion was filed, the Court had not ruled on that motion.

the resolution of the D&O Litigation. *See, e.g.*, *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998). In virtually identical circumstances, courts in other Circuits have enjoined the prosecution of shareholder actions and other third-party claims in order to avoid a race to the courthouse, protect the interests of the bankruptcy estate, and ensure the appropriate administration of the estate.

WHEREFORE, for the reasons set forth herein and in the accompanying supporting memorandum of law, the Trustee respectfully requests that this Court enter a preliminary injunction pursuant to Section 105(a) of the Bankruptcy Code enjoining the Shareholder Plaintiffs from (1) any further prosecution or settlement of the Shareholder Actions until the conclusion of the D&O Litigation, including any appeals and resulting collection proceedings, and (2) accepting any proceeds of any D&O Insurance, other than defense cost reimbursement in the D&O Litigation until the conclusion of the D&O litigation, including any appeals and resulting collection proceedings. The Trustee further respectfully requests that the Court provide such further relief to which he might show himself entitled.

Dated: March 17, 2005

> The Liquidation Trust,
> by the Liquidation Trust Representative
>
> By its attorneys,
>
> /s/ MICHAEL D. WARNER
> _____
> Michael D. Warner, Esq. (TX Bar No. 00792304)
> Lewis T Stevens, Esq. (TX Bar No. 24031366)
> **WARNER STEVENS, L.L.P.**
> 1700 City Center Tower II
> 301 Commerce Street
> Fort Worth, TX 76102
> Telephone: 817.810.5250
> Facsimile: 817.810.5255