UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES B. BOLES, LIQUIDATION TRUST REPRESENTATIVE OF THE ENIVID, INC. LIQUIDATION TRUST,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW J. FILIPOWSKI, PAUL HUMENANSKY, MICHAEL CULLINANE and JUDE SULLIVAN,<br><br>Defendants. | Case No. 05-CV-10675-PBS |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION
TO WITHDRAW REFERENCE TO BANKRUPTCY COURT**

Demonstrating exactly why the same court should hear the matters now being heard separately, plaintiff here says one thing to this Court, but says the opposite to the Bankruptcy Court. While representing to this Court that the adversary proceeding and the shareholder actions in question "involve different facts, claims, and parties" (Pltf.'s Mem. in Opp. to Mot. to Withdraw Reference ("Opp. Mem.") at 2), plaintiff represents to the Bankruptcy Court that the shareholder actions are so "related to" the bankruptcy that they should be enjoined from proceeding. (Pltf.'s Mem. in Support of Mot. for Prelim. Inj., attached as Ex. A, at 9-12.) Indeed, quoting from a Seventh Circuit decision, plaintiff states: "'They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy.'" (*Id.* at 10.) By talking out of both sides of his mouth, plaintiff tries to exploit the inefficiencies of simultaneous, related litigation in different

forums. But this is precisely what the statutory withdrawal provision would have district courts, such as this Court, prevent.

Plaintiff's inconsistencies are not confined to dissembling before different judges; they appear also at different points within the same brief. For example, and as predicted by defendants (*See* Mem. in Support of Motion to Withdraw Reference ("Withdrawal Mem.") at 8), plaintiff contends that the presence of core bankruptcy counts at the end of his complaint somehow converts the state-law claims at the beginning of that complaint into core claims. (Opp. Mem. at 9). But elsewhere he states that the non-core state-law claims are the predominant claims:

> The Complaint in the D&O Litigation alleges, among other things, causes of action against those D&Os for breach of the fiduciary duty of loyalty; breach of the fiduciary duty of care; breach of the fiduciary duty of good faith; and the tort of deepening insolvency, all causing damages to the creditors of Divine.

(*Id.* at 4.) The "other things," in contrast, are ancillary objections, most of which are contingent on the merits of the state-law claims.-- not vice-versa. (*See* Withdrawal Mem. at 7-8).

In any event, plaintiff's reliance on the core/non-core distinction is a red herring. As Movants have already noted, <u>this Court may withdraw the reference without addressing whether plaintiff's claims are core or non-core</u>; the existence of parallel suits and the overarching policy in favor of judicial efficiency is sufficient basis for withdrawal in such a scenario. (*See* Withdrawal Mem. at 5-6, 8 and n.7).

Plaintiff, of course, suggests that these cases are not parallel, but that is merely asking this Court to ignore the forest and look only at the trees. Plaintiff counts and compares paragraphs and particular causes of action (Opp. Mem. at 13-14), but nowhere

does he come to terms with the fact that both he and the shareholder plaintiffs are complaining about essentially the same thing: Divine's course of acquisitions, including in particular its acquisition and operation of the companies RoweCom, Delano and Viant. *See* Withdrawal Mem. At 1-2.[1] And plaintiff's suggestion that complete factual and legal identity between cases is the standard to be met before withdrawal is allowed (*see* Opp. Mem. At 13 *et seq.*) is unsupported by judicial precedent. *See, e.g., Big Rivers Elec. Corp. v. Green River Coal Co.*, 182 B.R. 751, 755 (W.D.Ky. 1995) (withdrawing reference when cases involved "many of the same facts" and "many of the [same] legal issues"; citing *In re Wedtech Corp.*, 81 B.R. 237 (S.D.N.Y. 1987)) (emphasis added). Adding one new defendant (Mr. Sullivan) to the mix and making even more prolix allegations than those in the shareholder actions does not avoid the essential overlap among these cases.

As for the Bankruptcy Court's supposed "extensive familiarity" with plaintiff's case (Opp. Mem. at 16), it simply doesn't exist. All that has happened in the case is the filing of a complaint and motions to dismiss, to which plaintiff has not yet responded. Indeed, the parties have not yet appeared before the Bankruptcy Court regarding this action. The fact that the Bankruptcy Court nominally "presided over" the Examiner's investigation (*Id.*) adds nothing, since that investigation did not require the court to consider the facts being investigated.

Finally, and contrary to plaintiff's contention, there is no reason for this Court to delay ruling on this motion until after the Bankruptcy Court decides whether to enjoin the

---

[1] And while plaintiff makes much of the fact that the shareholder actions allege misrepresentations (Opp. Mem. At 13-14), he ignores the fact that his own complaint alleges misrepresentations by the same defendants regarding the same matters. *See* Withdrawal Mem. at n. 4.

shareholder actions. First, the question of what forum these actions should proceed in is distinct from the schedule on which they should proceed. Second, plaintiff's optimism notwithstanding, it is far from clear that his injunction motion will succeed.

Accordingly, we respectfully request that the Court now withdraw the reference of plaintiff's case to Bankruptcy Court.

| | |
|---|---|
| April 20, 2005 | Respectfully submitted, |
| | ANDREW J. FILIPOWSKI, MICHAEL P. CULLINANE and PAUL L. HUMENANSKY |
| | /s/ Joel G. Chefitz<br>Joel G. Chefitz<br>James E. Hanlon, Jr.<br>**HOWREY LLP**<br>321 N. Clark Street, Suite 3400<br>Chicago, IL 60610<br>312-595-1239 |
| **For Andrew J. Filipowski** | **For Michael P. Cullinane** |
| /s/ Bruce S. Sperling<br>Bruce S. Sperling<br>Thomas D. Brooks<br>**SPERLING & SLATER, P.C.**<br>55 West Monroe Street<br>Suite 3200<br>Chicago, IL 60603<br>**312-641-3200** | /s/ Samuel B. Isaacson<br>Samuel B. Isaacson<br>Joseph E. Collins<br>**DLA PIPER RUDNICK GRAY CARY**<br>203 North LaSalle Street<br>Suite 1800<br>Chicago, IL 60601<br>**312-368-4000** |
| **For Paul L. Humenansky** | |
| /s/ Joel G. Chefitz<br>Joel G. Chefitz<br>James E. Hanlon, Jr.<br>**HOWREY LLP**<br>321 N. Clark Street, Suite 3400<br>Chicago, IL 60610<br>**312-595-1239** | |

DM_US\8194341.v1

# Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ENIVID, INC., et al.,[1]<br><br>Reorganized Debtors.<br><br>―――――――――――――――――――<br><br>JAMES B. BOLES, LIQUIDATION TRUST REPRESENTATIVE OF THE LIQUIDATION TRUST, AS ASSIGNEE OF STEWART GROSSMAN, EXAMINER OF IN RE ENIVID, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>MIKE TURNER, on behalf of himself and all others similarly situated, SHARON BOBBITT, individually and on behalf of all others similarly situated, JAMES TITO, FRANK WADDELL, JAMES F. HOWARD, on behalf of himself and all others similarly situated, and CHRIS BROWN, on behalf of himself and all others similarly situated,<br><br>    Defendants. | Chapter 11 [Confirmed Plan]<br><br>Case Nos. 03-11472-JNF and<br>  03-11474-JNF through<br>  03-11478-JNF and<br>  03-12681-JNF through<br>  03-12715-JNF<br><br>[Substantively consolidated]<br><br><br><br>Adversary Proceeding<br>No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR PELIMINARY INJUNCTION**

---

[1] The Substantively Consolidated Reorganized Debtors are the following entities: enivid, Inc., Open Market, Inc. enivid Managed Services, Inc., enivid DR Corporation, Viant Corporation and eShare Communications, Inc., Delano Technology Corp., enivid technology ventures, iCentral, Inc., Inventions, Inc., enivid/Emicom, Inc., SageMaker, Inc., Waypoint Software Corporation, Preceptual Robotics, Inc., enivid Global Services, Inc., eprise Corporation, Denali, Inc., Melita Finance, Inc., SMI Holding Corp., Retrieval Technologies, Inc., enivid international, Inc., enivid software, inc., Opinionware.com, Inc., Melita Intellectual Property, Inc., smallwonders software!, inc., Open Market Securities Corporation, Futuretense Corporation, RWT Corporation, LOTN, Inc., Eprise Securities Corp., SageMaker (Europe), Inc., Global Recall, Inc., databites, inc., enivid interVentures, Inc., enivid Ireland, Inc., Folio Corporation, Venture Capital Unlimited Acquisition, enivid Synchrony Communications, Inc., Softmetric, Inc., Air enivid, Inc., SM2 Holding Corp. (collectively, the "Debtors").

TO THE HONORABLE JOAN N. FEENEY, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Plaintiff, James B. Boles, the Liquidation Trust Representative (the "Trustee") of the Liquidation Trust established pursuant to the Official Committee of Unsecured Creditors' Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code Dated September 30, 2004, as Modified November 23, 2004 (the "Plan"), as Confirmed by Order of the Bankruptcy Court dated December 8, 2004, and which Plan became Effective on December 20, 2004, files this Memorandum of Law in support of his motion for entry of a preliminary injunction staying prosecution of two securities class actions brought by lead plaintiffs Mike Turner, Sharon Bobbitt, James Tito, Frank Waddell, James F. Howard and Chris Brown, on behalf of themselves and all others similarly situated (the "Shareholder Plaintiffs"). In support of this motion, the Trustee states as follows:

## INTRODUCTION

The Trustee seeks an injunction staying the class action lawsuits filed by Divine shareholders Mike Turner, Sharon Bobbitt, James Tito, Frank Waddell, James F. Howard and Chris Brown until such time as the D&O Litigation being pursued by the Trustee has been settled or adjudicated. The reason this injunction is necessary is simple: unless it is granted, the Shareholder Plaintiffs may be able to *wipe out* the insurance proceeds that would otherwise be available for the Trustee to recover in connection with his adversary complaint against Divine's former directors and officers – proceeds that would then be available to the Estate in order to be distributed to Divine's creditors.

Because a judgment or settlement in the Shareholder Actions would have a direct effect on the bankruptcy Estate – particularly in terms of how much property is ultimately available for

distribution to the creditors – this Court has the authority to grant the injunction under Section 105(a) of the Bankruptcy Code. And, since such a judgment or settlement in the Shareholder Actions would turn the well-settled order of priority – creditors before equity – on its ear, the Court *should* grant the injunction.

## BACKGROUND FACTS

### A. Divine's decline and death at the hands of its D&Os.

Divine (which was later renamed enivid, inc.) was formed in 1999 as an internet-holding company engaging in business-to-business e-commerce. Despite a gloomy outlook at the time for technology-related initial public offerings, Divine was originally formed to invest in start-up and early stage technology companies, and then reap the rewards as its investments went public. To that end, Divine was able to raise (and eventually squander) close to $1 billion in cash. It invested heavily in numerous small businesses, mainly acquiring interests in companies with whom Divine's officers and directors had pre-existing ownership and/or business relationships. However, Divine was never able to take a single one of its investments public. As such, it was an outright failure.

Divine then reinvented itself to become a business entity focused on generating actual operating profits. However, Divine's officers and directors (the "D&Os") refused to consider achieving success through operations, and instead decided that success could be achieved only through growth by acquisitions. Divine then embarked on a frenetic acquisition spree.

As Divine pursued yet another flawed strategy, its D&Os repeatedly ignored the various warning signs. As Divine's condition continued to worsen, Divine's D&Os ignored their duties by turning their attention to protecting themselves and their own interests rather than the interests of Divine and its creditors. In doing so, Divine's D&Os recklessly, intentionally and knowingly

breached their duties to Divine and Divine's creditors. Moreover, they ensured Divine's downfall.

Indeed, Divine could not recover. On February 23, 2003, enivid, inc., f/k/a divine, inc. and five related entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330. The remaining debtor entities filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on April 2, 2003. All of the cases were substantively consolidated in the United States Bankruptcy Court for the District of Massachusetts. The Court confirmed the Creditors Committee's Chapter 11 Plan of Liquidation (the "Committee Plan") on December 8, 2004, and it became effective on December 20, 2004.

B.   The D&O litigation.

On December 17, 2004, Stewart Grossman, the Examiner appointed by the Court to pursue any and all claims against the D&Os on behalf of Divine's creditors, filed an Adversary Proceeding in this Court against four of Divine's D&Os: Andrew J. Filipowski, Paul Humenansky, Michael Cullinane and Jude Sullivan (the "D&O Litigation"). The Complaint in the D&O Litigation alleges, among other things, causes of action against those D&Os for breach of the fiduciary duty of loyalty; breach of the fiduciary duty of care; breach of the fiduciary duty of good faith; and the tort of deepening insolvency.

Although the specific amount of damages sought in the Complaint is not set out, it is currently estimated that the allowed claims against the Estates recoverable from the damages caused by the D&Os' breaches of their duties to Divine is at least $150 million.

Upon confirmation of the Committee Plan, Jim Boles, the Liquidation Trust Representative, was substituted as Plaintiff in the D&O Litigation pursuant to an assignment from Mr. Grossman.

4

At present, the date for the Defendants to file their answers or otherwise respond in the D&O Litigation is March 18, 2005.

### C.  The Shareholder Actions.

The existing Shareholder Actions are the end result of a number of individual suits filed by various Divine shareholders against Divine D&Os in Illinois state and federal court. After consolidation and removal, the *Turner* and *Bobbitt* lawsuits were transferred to the United States District Court, Northern District of Massachusetts, Eastern Division, where they are now pending before Judge Saris as *Bobbitt, Individually and On Behalf of All Others Similarly Situated v. Filipowski, et al.*, No. 04-12263-PBS, and *Turner, On Behalf of Himself and All Others Similarly Situated v. Filipowski, et al.*, No. 04-12294-PBS.[2] The *Howard and Brown* action was ordered transferred from district court to the Bankruptcy Court in the Northern District of Illinois in February of 2004; however, as of the date of the filing of this Motion, that transfer has not occurred.

The Shareholder Actions are class action suits seeking recovery for alleged violations of federal securities laws. Although none of the Shareholder Actions requests a specific dollar amount in damages, a fair reading of the pleadings demonstrates that the shareholders are seeking damages well in excess of $50 million.[3]

The Shareholder Actions have not progressed beyond the initial pleading stage. At present, the Defendants in those actions have filed motions to dismiss, but those motions have not yet been decided.

---

2  On March 8, 2005, the Plaintiffs in the *Bobbitt* case filed a motion to consolidate the *Bobbitt* and *Turner* actions. As of the date that this Motion was filed, the Court had not ruled on that motion.

3  Specifically, the Shareholder Plaintiffs purport to represent a class of investors who invested $100 million in Divine's initial public offering. *See* Second Consolidated Class Action Complaint for Violation for Violations of the Federal Securities Law, filed in the *Bobbitt* case, attached hereto as Exhibit A.

### D. The D&O insurance policies.

A number of D&O executive liability insurance policies may be applicable to this matter, in that one or more of the claims asserted by the Trustee and/or the Shareholder Plaintiffs may be covered by such policies. As such, those policies are critical to the Trustee's ability to recover on behalf of the Estate according to the priorities established by the Bankruptcy Code, and they are at the heart of this Motion.

Specifically, two AIG Insurance Company primary policies are at issue: (1) Policy No. 873-71-20, dated July 12, 2001 (covering July 2001 – July 2002) with a $10 million limit of liability; and (2) Policy No. 561-50-64, dated July 12, 2002 (covering July 2002 – July 2003), also with a $10 million limit of liability. (True and correct copies of the two AIG policies are attached hereto as Exhibits **B** and **C**).

In addition, three excess policies added additional coverage for the first AIG policy period: (1) St. Paul Policy 512CM0289, July 12, 2001, $5 million; (2) Lloyd's Policy 823/FD0100559, July 12, 2001, $5 million; and (3) Federal Insurance Company Policy 7023-24-49, July 12, 2001, $10 million. Also, one excess policy, Indian Harbor Policy ELU 83471-02, dated July12, 2002, provided an additional $10 million coverage on the second AIG policy period.

In summary, for acts performed by the D&Os during the period July 12, 2001 through July 12, 2002, there are potentially recoverable insurance proceeds of $30 million; and, for acts performed by the D&Os during the period July 12, 2002 through July 12, 2003, there are potentially recoverable insurance proceeds of $20 million.

Pursuant to the policies, "Coverage A" provides coverage to the D&Os for claims made against them for wrongful acts (as defined in the policies). *See* Exhibit B at ¶ 5; *see also* Exhibit

C at ¶ 5. "Coverage B" provides coverage *to Divine* for amounts Divine is required to indemnify the D&Os for wrongful acts. *See id.* As such, the policies *expressly* contemplate situations in which Divine (and now the Estate) can recover amounts it has paid out to the D&Os under certain indemnification provisions.

However, the policies are what is known as "wasting" policies, in that the insurers are only required to pay up to the policy limits *once*, no matter how many claims are brought against the D&Os. Specifically, the policies state as follows:

> The limit of liability stated in Item 3 of the Declarations is the aggregate limit of the Insurer's liability for all Loss, under Coverages A, B, C and D combined, arising out of all Claims first made against each and every insured, and all Crisis Loss occurring, during the Policy Period (if applicable). . . . Defense costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.

Exhibit B at ¶ 5; *see also* Exhibit C at ¶ 5.

Put another way, the D&O policies do not segregate any proceeds for any of the different items or claims they cover. Specifically, since Divine's insurers already are providing defense costs in connection with the Shareholder Actions, the amount of proceeds available to pay any other claim by the creditors is being reduced with each payment of defense costs. As such, the Shareholders Plaintiffs' continued prosecution of their case threatens to impact the bankruptcy Estate by virtue of the mounting defense costs being paid out of the D&O insurance coverage – each dollar of which reduces the insurance proceeds potentially available to the Estate and, ultimately, to the creditors.

Even more importantly, if Divine's insurers pay a judgment or even a settlement in a Shareholder Action that exhausts the limits of one or more of the policies, no additional proceeds are available under such polices to pay any other claims by the creditors. Thus, allowing the Shareholder Actions to proceed has already reduced, and will continue to reduce, the available

policy proceeds by payment of defense costs. A judgment or settlement would further reduce or even deplete the amount of property in the bankruptcy Estate and could give the shareholders a "back door" way to take possession of funds that would – and should – otherwise go to Divine's creditors, essentially circumventing the well-settled priorities established under the Bankruptcy Code.

Finally, the Shareholders' Actions have a direct effect on Divine's bankruptcy Estates in that the D&Os have, in their Proofs of Claim, made claims for indemnification for those and other pending causes of action. As noted above, these claims may be covered by one or more of the D&O policies under "Coverage B." As such, it may be necessary for the Court to adjudicate the merits of those claims – and, as such, it is *clearly* in the interest of the Estates and the Court to protect the proceeds of the policies pending such adjudication.

For these reasons, and as set out more fully below, it is imperative that the Court stay the Shareholder Actions until the D&O Litigation is resolved fully.

## ARGUMENT AND AUTHORITIES

The concept of enjoining third-party lawsuits pursuant to Bankruptcy Code provisions based upon competition for the proceeds of insurance policy proceeds is a rather new one; and, as such, there is relatively little case law addressing it. The First Circuit has not yet developed a body of law on the subject, so this Court has no controlling authority upon which to rely. However, persuasive authority is being written in other jurisdictions – and, most importantly, the Seventh Circuit has developed an analysis that is entirely consistent with underlying principles of bankruptcy law in general, and with case law in this Circuit in particular. This discussion, therefore, will focus on the most recent developments in this and other Circuits in order to demonstrate that the Trustee is entitled to an injunction staying the Shareholder Actions.

I.  **Under controlling First Circuit law, this Court may stay pending litigation by injunction pursuant to Section 105(a) of the Bankruptcy Code.**

Under Section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]."

The First Circuit has made it clear that this power extends to granting injunctions staying other lawsuits when it is necessary to do so in order to protect the assets of the Estate. For example, in *Monarch Life Insurance Co. v. Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995), the court affirmed a bankruptcy court order enjoining an insurance company's prosecution of a legal malpractice action against its former counsel in violation of a provision in a confirmed plan of reorganization for the insurance company's parent. There, the court expressly held that section 105(a) "confers ample power upon the bankruptcy court to enjoin the initiation or continuation of judicial proceedings in a nonbankruptcy forum against nondebtors during the pendency of a chapter 11 case, where the court reasonably concludes that such actions would entail or threaten adverse 'impact' on the administration of the chapter 11 estate." *Id.* at 978-79, citing *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991). One purpose of such an injunction is to prevent a "race to the courthouse." *Id.* at 979.

In short, it is clear that this Court has the authority to enjoin the Shareholder Actions. And, as will be shown below, it is equally clear that the Court should do so.

II. **Using a legal analysis that is completely consistent with First Circuit law, the Seventh Circuit has fully demonstrated why an injunction pursuant to section 105(a) is appropriate and necessary under these circumstances.**

As noted above, the Seventh Circuit is the only federal circuit that has developed a body of case law confronting the issue of shareholder/creditor competition for the same insurance proceeds. Its analysis is also grounded on settled principles of law with which the First Circuit agrees. As such, this Court can look to the Seventh Circuit cases and analysis in making its

9

determination that an injunction is proper under these circumstances.

The Seventh Circuit first addressed this issue in *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998). There, the court was faced with the issue of whether a bankruptcy court could stay RICO suits by investors in a bankrupt bogus commodities business during the pendency of that business' bankruptcy. *Id.* at 877. According to the court, the decision whether it had such power turned on whether the investors' claims were "related to" the bankruptcy proceedings. *Id.* at 882. The court answered this question in the affirmative: "They are claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy." *Id.* In addition, the court found that a stay of the investors' claims would avoid "a race to the courthouse [that] would derail the bankruptcy proceedings." *Id.* at 883. For these reasons, an injunction pursuant to section 105(a) was proper.

Building on the *Fisher* decision, the issue of a stay related to dual suits seeking the same insurance proceeds was squarely addressed in *Megliola v. Maxwell*, 293 B.R. 443 (N.D. Ill. 2003) (affirming *In re marchFIRST, Inc*, 288 B.R. 526 (Bankr. N.D. Ill. 2002)). There (as in this case), a group of shareholders brought a class action suit for securities fraud against three officers of Marchfirst, Inc. *Id.* at 444. Thereafter, Marchfirst filed a voluntary petition under Chapter 11 (which was later converted to a Chapter 7 case). *Id.* at 445. The Trustee then filed a suit for breach of fiduciary duty against the officers and directors of Marchfirst, including the defendants named in the shareholder class action suit. *Id.* Noting that Marchfirst had a primary and two excess D&O insurance policies, and that both lawsuits sought to recover damages from those same policies, the Trustee filed an adversary proceeding and moved for an injunction staying the shareholder action. *Id.* After a hearing, the court granted the injunction. *Id.* at 446.

Again, the pivotal issue was whether the shareholder action was sufficiently "related to"

the Trustee's suit to allow the bankruptcy court to exercise its power under section 105(a). The court noted that (in the Seventh Circuit) "a case is 'related to' a bankruptcy 'when the dispute affects the amount of property for distribution (i.e., the debtor's estate) or the allocation of property among creditors.'" *Id.* at 448. The court then held that, since the shareholders and the Trustee were both competing for the same insurance proceeds – and, thus, the outcome of that competition would affect the amount of property for distribution to creditors – the shareholder action *was* "related to" the bankruptcy, and it should be enjoined and stayed. *Id.* at 449.

These holdings are supported by the United States Supreme Court, which has confirmed the standard for "related to" jurisdiction by stating that proceedings related to a bankruptcy include "suits between third parties which have an effect on the bankruptcy estate. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-308 n.5 and n.6 (1995).

In addition, the reasoning and holdings of these cases are consistent with First Circuit law. Specifically, courts in the First Circuit also have held that a matter is "related to" a bankruptcy where that matter may affect the amount of money in the Estate. *See, e.g., In re CyberMedica, Inc.*, 280 B.R. 12, 17 (Bankr. D. Mass. 2002) ("There is a fundamental test that has been used in determining whether or not property belongs to the estate and that test is whether the debtor's estate is worth more with them than without them"). As such, the holding of *Megliola* – which is precisely on-point – is entirely consistent with the law of this jurisdiction.

Finally, it is important to note that, under the Seventh Circuit approach, the Court need not engage in the usual four-point analysis to determine that the Trustee is entitled to an

11

injunction: "A bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it. In other words, the court does not need to demonstrate an inadequate remedy at law or irreparable harm." *Megliola*, 293 B.R. at 446, *quoting Fisher*, 155 F.3d at 882.[4]

## III. Under the analysis articulated by the Seventh Circuit, the Court should grant the injunction.

### A. The Trustee has proven the likelihood of success and, as such, is entitled to this preliminary injunction.

Here, there is no question that the Shareholder Actions are related to this Chapter 11 case by virtue of the fact that the Shareholder Plaintiffs are unquestionably expecting to tap into the same pool of D&O insurance money that is also a clear source of recovery in the D&O Litigation. As such, this case is *identical* to the facts of *Megliola*, where the court found that the shareholder securities fraud action was related to claims brought on behalf of a bankruptcy estate against directors and officers, noting that "[b]oth the Class Action plaintiffs and the Trustee seek to satisfy potential judgments in their actions from the . . . proceeds of the insurance policies." 293 B.R. at 445. The need and purpose for such an injunction could not be clearer:

> Section 105 of the Bankruptcy Code and the Seventh Circuit require this Court to enjoin any related proceeding which may have an effect on the bankruptcy case. There is no question that a judgment in the Class Action could have a significant effect on this bankruptcy estate. If the judgment is $100 million, the insurance policies maintained by Marchfirst would be wiped out, leaving no insurance proceeds for the Trustee to recover. Because the amount of damages are not delineated in the shareholders' complaint, the possibility exists that all of the

---

4 The only published decision that has taken a position contrary to that of the Seventh Circuit is a district court opinion out of the Third Circuit, *In re Reliance Acceptance Group, Inc.*, 235 B.R. 548 (D. Del. 1999). Specifically, although that court recognized that a "race to the courthouse," together with the fact that shareholders recovering money that ought otherwise go to the estate are "the type of harm to which a court of equity would normally be sensitive," the court refused to find any "legal principle" for putting the estate's claims before those of the shareholders. *Id.* at 561. In doing so, of course, the court ignored well-settled bankruptcy principles. In the words of the *Megliola* court (which expressly disapproved *Reliance*): "*Reliance* fails to explain why a plaintiff's status of shareholder rather than creditor makes a difference in the 'related to' analysis. Moreover, *Reliance* does not discuss the general principles of 'related to' jurisdiction. . . . *Reliance* is neither controlling nor persuasive." 293 B.R at 449 n. 5. The case is simply wrongly decided; it has not been followed; and it should be disregarded.

12

proceeds of the insurance policies would be used to satisfy such a judgment. *Id.* at 446.

Here, too, the Court should not allow a race to the courthouse – or, now, a race to judgment – to determine whether Divine's shareholders or its creditors should have the first – and, indeed, probably the *only* – opportunity to access the limited pool of D&O insurance proceeds. To the contrary, the Court should stay the Shareholder Actions to *prevent* the shareholders from interfering with the Trustee's efforts to gather up all of the Estate's potential assets for ultimate distribution to creditors, according to the priority system set forth in the Bankruptcy Code and consistent with the dictates of the Confirmed Plan. Moreover, it is those very instruments – the Code and the Plan – that demonstrate that the D&O litigation should have priority over the Shareholder Actions as a matter of law. As such, the Trustee has proven his likelihood of success, and is entitled to the injunction sought in this Motion.

B.  **An injunction staying the Shareholder Actions is in the public interest.**

Finally, the Court should grant the injunction because it is in the interest of well-expressed public policy to do so. Specifically, the Bankruptcy Code reflects Congress' reasoned judgment that creditors should receive priority treatment over shareholders in a bankruptcy case. *See, e.g.,* 11 U.S.C. §§ 726, 1229 and 501(b) (subordinating shareholder claims to those of general creditors). This distinction arises from, and correctly reflects, the different risks and rewards that shareholders and creditors face in their dealings with the corporate debtor. *See, e.g., In re Betacom of Phoenix, Inc.,* 240 F.3d 823, 830 (9th Cir. 2001) ("The general creditors have not had the potential benefit of the proceeds of the enterprise deriving from ownership of the securities and it is inequitable to permit shareholders that have had this potential benefit to shift the loss to general creditors"); *In re Granite Partners, L.P.,* 208 B.R. 332, 336 (Bankr. S.D.N.Y.

13

1997) (shareholders face an enhanced risk that the corporation might become insolvent, and this enhanced risk "represents the flipside of [the shareholder's] unique right to [share] in the profits"). Shareholders should not be allowed to escape this logical policy choice by racing the creditors to potential assets – whether those assets are insurance proceeds or the personal wealth of individual directors and officers who are liable to the Debtor for their misdeeds.

Put simply, public policy interests will be advanced by the issuance of an injunction because such an injunction will allow the Trustee to maximize the assets of the Estate, avoid an expensive race to final judgment, and ensure that the pending bankruptcy proceedings are not impeded by the Shareholder Actions. Although the Shareholder Plaintiffs may have valid claims against the D&Os, the validity of those claims are not at issue here. The only issue before the Court now is whether the Trustee – and, thus, the creditors – have a right to "go to the head of the line" as a matter of fundamental bankruptcy principles where both the creditors and the shareholders have claims to the same limited pool of assets. As shown herein, the answer is unequivocally "yes." As such, an injunction is appropriate and necessary, and the Trustee respectfully requests that the Court grant the injunction sought.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Trustee respectfully requests that this Court enter a preliminary injunction pursuant to Section 105(a) of the Bankruptcy Code enjoining the Shareholder Plaintiffs from (1) any further prosecution or settlement of the Shareholder Actions until the conclusion of the D&O Litigation, including any appeals and resulting collection proceedings, and (2) accepting any proceeds of any D&O Insurance, other than defense cost reimbursement, until the conclusion of the D&O litigation, including any appeals and resulting collection proceedings. The Trustee further respectfully requests that the

Court provide such further relief to which he might show himself entitled.

Dated: March 17, 2005

                                        The Liquidation Trust,
                                        by the Liquidation Trust Representative

                                        By its attorneys,

                                        /S/ MICHAEL D. WARNER
                                        _____
                                        Michael D. Warner, Esq. (TX Bar No. 00792304)
                                        Lewis T Stevens, Esq. (TX Bar No. 24031366)
                                        **WARNER STEVENS, L.L.P.**
                                        1700 City Center Tower II
                                        301 Commerce Street
                                        Fort Worth, TX 76102
                                        Telephone: 817.810.5250
                                        Facsimile: 817.810.5255